**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ERICA OLSEN, an individual, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case Number CIV-04-1265-C |
| | ) |
| ALLSUPS CONVENIENCE STORE, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Now before the Court is a Motion for Partial Summary Judgment[1] filed by Defendant Allsups' Convenience Store, Inc. (ACS). Plaintiff Erica Olsen (Olsen) filed a response, ACS filed a reply, and Olsen filed a surreply. Accordingly, the matter is ripe for disposition. The Court, upon full consideration of the applicable law and the litigants' submissions, now **GRANTS IN PART** and **DENIES IN PART** ACS's Motion for Partial Summary Judgment.

### BACKGROUND

In Olsen's timely filed complaint, she alleges that ACS subjected her to discriminatory treatment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. (Title VII). Olsen began her employment with ACS in July 2003 as a clerk and reported to store manager Mary Remy (Remy). (Def.'s Mot. Summ. J., Dkt. No. 27, at 2 ¶ 1.) Due

---

[1] The Court construes Plaintiff's complaint as bringing four claims: disparate treatment regarding Defendant's application of its leave of absence policy, wrongful termination, failure to hire, and retaliation. (Pl.'s Compl., Dkt. No. 1, at ¶¶ 3, 10-12, 15, 19, 21.) Neither Defendant nor Plaintiff addressed the retaliation claim in their briefs. Although it appears that Plaintiff did not exhaust administrative remedies on the retaliation claim, because neither party addressed it, the Court's order does not reach the retaliation claim. As a result, Defendant's motion is restyled as a "Motion for Partial Summary Judgment."

to Olsen's good work performance, ACS promoted her to First Assistant Manager. (Pl.'s Resp., Dkt. No. 37, Ex. 2 ¶ .)

In early November 2003, Olsen informed Remy that she was pregnant and subsequently informed Regional Manager Ari Lyons (Lyons) of the same. (Def.'s Mot., at 3 ¶ 4.) According to Olsen, Lyons "responded by saying that it was his understanding that pregnant women could not work at [ACS] and that he believed there was store policy against hiring or keeping pregnant women employed at the store." (Pl.'s Resp., Ex.9 ¶ 4.) Lyons then asked Olsen if she had work restrictions in addition to being pregnant. (Id.) Olsen stated that she could not lift heavy items. (Id.) Neither Olsen nor ACS discussed what was meant by the phrase "heavy items." Olsen believes that her restriction would not have affected her ability to perform her duties as First Assistant Manager as she had authority to instruct other ACS employees to lift items that she could not. (Id. ¶¶ 4, 6.)

Upon hearing about Olsen's conversation with Lyons, Remy questioned Lyons about ACS's policy regarding pregnant women. (Id. Ex. 2 ¶ 19.) According to Remy, Lyons stated "that [ACS] had a policy against hiring and employing pregnant women because if they hurt themsel[ves] or the[ir] bab[ies] on the job, then [ACS] could be liable." (Id. ¶ 20.) Remy then spoke with Human Resources Director Susan Garrett (Garrett) who, in turn, confirmed that ACS had a written policy against hiring or employing pregnant women. (Id. ¶¶ 22, 23.) Remy requested a copy of the written policy but Garrett stated she was not allowed to send a copy to Remy. (Id.) ACS then placed Olsen on a sixty-day unpaid medical leave of absence according to its policy. (Id. ¶ 26; id. Ex. 9 ¶¶ 2, 13.)

Days after ACS placed on Olsen on a leave of absence, her pregnancy ended in a miscarriage. (Def.'s Mot., at 5 n.23.) According to Olsen, before the sixty-day leave of absence expired, Remy informed her that ACS had terminated her employment. (Pl.'s Resp., Ex. 2 ¶ 34; id. Ex. 9 ¶ 4.) Olsen subsequently applied for re-employment with ACS on two occasions (Def.'s Mot., at 5 ¶ 8) but was not rehired by ACS.

## STANDARD OF REVIEW

Summary judgment is proper only if ACS, as the moving party, shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The Court's function, at the summary judgment stage, is not to weigh the evidence but to determine whether there is a genuine issue for trial. Willis v. Midland Risk Ins. Co., 42 F.3d 607, 611 (10th Cir. 1994). "An issue is 'genuine' if [viewing the full record] there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient to create a dispute of fact that is 'genuine'. . . ." Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997). ACS, as the party not bearing the burden of persuasion at trial, need not negate Olsen's claims, but may point out to the Court her lack of evidence on an essential element of the claims. Adams v. Am. Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000). Olsen will avoid summary judgment only by going beyond the pleadings and presenting evidence sufficient to establish the existence, as a triable issue, of an essential

and contested element of the case. Perry v. Woodward, 199 F.3d 1126, 1131 (10th Cir. 1999). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." See Adler, 144 F.3d at 670 (citing Anderson, 477 U.S. at 248). When deciding whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmoving party, Olsen, and draws all reasonable inferences in her favor. See Anderson, 477 U.S. at 255; Simms v. Oklahoma ex rel. Dep't of Mental Health, 165 F.3d 1321, 1326 (10th Cir. 1999).

## DISCUSSION

In its briefs, ACS proffers three arguments: that Olsen's disparate treatment claim fails the McDonnell Douglas[2] test; that her failure-to-rehire claims fail because she did not exhaust her administrative remedies; and that Olsen has not produced evidence that ACS terminated her. Olsen responds that the McDonnell Douglas test is inapplicable as she proffers direct evidence in support of her disparate treatment claim, and further argues hat she has presented evidence of wrongful termination. Olsen concedes, however, ACS's argument pertaining to her failure-to-rehire claims.

**I.      Olsen's Title VII Disparate Treatment Claim.**

Olsen contends that ACS subjected her to disparate treatment by placing her on an unwanted, unneeded, and unpaid sixty-day medical leave of absence because she was pregnant. ACS argues that Olsen can neither demonstrate a prima facie case of disparate

---

[2] See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)

treatment nor produce evidence of pretext as required by the McDonnell Douglas test. Olsen argues that she proffers direct evidence of disparate treatment; therefore, she has no need to resort to the McDonnell Douglas test. Olsen's argument is persuasive.

In addition to the McDonnell Douglas prima facie scheme of proof, Olsen may prove her disparate treatment claim directly, that is, by presenting either direct or circumstantial evidence that a forbidden animus was a motivating factor in ACS's decision to place her on a medical leave of absence. Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 550 (10th Cir. 1999); Thomas v. Denny's, Inc., 111 F.3d 1506, 1512 (10th Cir. 1997); Greene v. Safeway Stores, Inc., 98 F.3d 554, 559-60 (10th Cir. 1996); Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1471 n.5 (10th Cir. 1992). For direct evidence, Olsen relies upon the alleged statements of Lyons and Garrett that ACS had a policy against hiring or keeping pregnant women employed at ACS.[3] Direct evidence proves the existence of the fact at issue without inference. Equal Employment Opportunity Comm. v. Wiltel, Inc., 81 F.3d 1508, 1514 (10th Cir. 1996). The Court finds that Olsen's proffered statements of Lyons and Garrett constitute direct evidence of an existing ACS policy to discriminate against pregnant women, id.; therefore, summary judgment is inappropriate on on Olsen's Title VII disparate treatment claim  In the alternative, even if the statements by Lyons and Garrett were to fail the direct evidence test, they can be considered circumstantial evidence that a forbidden animus was a factor in ACS's decision, obviating the need for application of the McDonnell Douglas test.

---

[3] Lyons and Garrett deny making the statements; however, at the summary judgment stage the Court assumes all well-pleaded facts are true.

According to Olsen, Lyons made his statement regarding ACS's policy immediately prior to asking Olsen if she had any restrictions <u>in addition to being pregnant</u>. Lyons' statements to both Olsen and Remy were not merely isolated comments; they involved ACS's policy and were either directed at Olsen herself or concerned her position at ACS. <u>Rea v. Martin Marietta Corp.</u>, 29 F.3d 1450, 1457 (10th Cir. 1994). As a result, Lyons' statements about ACS's pregnancy policy, pregnancy being a liability risk, and his inference that pregnancy is itself a restriction, are sufficient circumstantial evidence to demonstrate that a forbidden animus was a motivating factor in ACS's decision to place Olsen on a medical leave of absence. <u>Medlock</u>, 164 F.3d at 550. See 42 U.S.C. §§ 2000e(k), 2000e-2(a), (m). Therefore, summary judgment is inappropriate on Olsen's Title VII disparate treatment claim.

## II.    Olsen's Title VII Wrongful Termination Claim.

Olsen contends that ACS wrongfully terminated her prior to the end of her sixty-day leave of absence. ACS argues that Olsen resigned her position and that she has not produced evidence of termination. However, Olsen has presented evidence that ACS terminated her. (Pl.'s Resp., Ex. 2 ¶ 34; <u>id</u>. Ex. 9 ¶ 4; Pl.'s Surreply, Dkt. No. 45, Ex. 1 at 11, 12.) Genuine issues of material fact exist with regard to Olsen's departure from ACS. Therefore, summary judgment is inappropriate on Olsen's Title VII wrongful termination claim.

## III.    Olsen's Title VII Failure-to-Rehire Claims.

ACS argues that Olsen's failure-to-rehire claims are barred as she failed to file an Equal Employment Opportunity Commission charge for the failure-to-rehire claims and

thereby exhaust her administrative remedies. Olsen, in her response, concedes ACS's argument. (Pl.'s Resp., at 23.) Indeed, ACS's argument is firmly grounded in law. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110-13 (2002); Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1325 (10th Cir. 2002). Therefore, summary judgment is appropriate on Olsen's Title VII failure-to-rehire claims.

## CONCLUSION

ACS has failed to shoulder the burden of demonstrating that it is entitled to judgment as a matter of law on Olsen's disparate treatment and wrongful termination claims; however, ACS has shouldered the burden with regard to Olsen's failure-to-rehire claims. Accordingly, ACS's Motion for Partial Summary Judgment [Dkt. No. 27] is **GRANTED IN PART** and **DENIED IN PART** as delineated more fully herein.

IT IS SO ORDERED this 27th day of September, 2005.

*[signature]*
ROBIN J. CAUTHRON
United States District Judge